UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ROBERT E. CATTANACH, | Civil No.  13-1664 (JRT/JSM) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL** |
| v. | |
| BNSF RAILWAY COMPANY, | |
| Defendant. | |

Frederic A. Bremseth, **BREMSETH LAW FIRM, PC**, 601 Carlson Parkway, Suite 995, Minnetonka, MN  55305, and Robert E. Cattanach, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN  55402, for plaintiff.

Emily A. Atkinson and Timothy K. Masterson, **SWEENEY & MASTERSON, PA**, 325 Cedar Street, Suite 600, St. Paul, MN  55101, for defendant.

Plaintiff Robert E. Cattanach initiated this diversity-jurisdiction personal injury negligence action against Defendant BNSF Railway Company ("BNSF") in 2013, after Cattanach crashed ON his bicycle on one of BNSF's railroad crossings.  As Cattanach went over the crossing, his front bicycle wheel fell into a gap of a several inches, with the gap running perpendicular to the rails and sitting between two cement panels.  Cattanach took his claims to trial in February 2016.  At trial, BNSF's argued that it was not negligent in maintaining the railroad crossing, and also, in the alternative, that if it were negligent, Cattanach was negligent too and his negligence should require a severe reduction in any damages award to Cattanach.

A few crucial pieces of evidence were admitted at trial that, in Cattanach's view, supported his version of events. First, one of BNSF's witnesses testified on cross examination that had the gap been situated a foot to the right of where it had actually been, then the gap would have constituted a safety hazard.[1] Secondly, documentary evidence in the form of several emails showed that BNSF was made aware of safety problems at the crossing prior to Cattanach's accident. (Those emails did not reference the gap itself, however.) And, thirdly, photographs showed that the gap had been present at the crossing since at least 2009.

On the other hand, the jury also heard the following evidence supporting BNSF's arguments. (1) Testimony and photographs showed that the gap was in the center of the right-hand lane, not on the right-hand side of the lane, where bicyclists are arguably supposed to ride. (2) A police officer testified that he had received complaints about problems at the crossing, but no one had ever complained to him about the gap that caused Cattanach's injury. (3) Several BNSF witnesses testified that they did not believe the gap to be a safety hazard. (4) The jury saw photographs of the appearance of the gap, and its size in the context of the road.

The case was submitted to a jury on February 8, 2016, and the jury returned later that afternoon with a verdict against Cattanach. The jury's verdict form contained six separate questions, the first of which asked, "Was Defendant BNSF negligent?" (Redacted Jury Verdict at 1, Feb. 8, 2016, Docket No. 173.) The jury marked, "NO."

---

[1] No transcript was ordered from the trial. Although the parties dispute some of the finer details of what happened at trial, the Court understands the parties to agree with the Court's described version of events.

(*Id.*)  The verdict form stated that if the jury answered that first question in the negative – as the jury did – then the jury's task was finished and it should not answer any more questions.  (*Id.*)  Nonetheless, the jury still answered Question 2, which asked, "Was Defendant BNSF's negligence a direct cause of injury or harm to Plaintiff Cattanach?" (*Id.*)  The jury again marked "No."  (*Id.*)  The jury did not fill out any of the remaining questions, which were directed to Cattanach's total damages, Cattanach's contributory negligence, and Cattanach and BNSF's comparative negligence.  (*Id.* at 2.)

## ANALYSIS

Cattanach moves the Court to grant him a new trial under Federal Rule of Civil Procedure 59 because, in Cattanach's view, the jury's verdict was against the great weight of the evidence.

Rule 59 provides in relevant part, "The court may, on motion, grant a new trial on all or some of the issues – and to any party – . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59.  One of the permissible reasons for a new trial is if the jury's verdict is against the great weight of evidence.  *See Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996).  If a party requests a new trial because they believe the jury's verdict to be against the great weight of the evidence, the Court "must analyze the evidence in the light most favorable to the prevailing party . . . and must not engage in a weighing or evaluation of the evidence or consider questions of credibility."  *Id.* (quoting *White v. Pence*, 961 F.2d 776, 779 (8th Cir. 1992)).  In order for the Court to grant such a motion, "all the evidence

must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party." *Id.* (quoting *White*, 961 F.2d at 779). Thus, the question becomes whether, "drawing all reasonable inferences in [the non-moving party's favor]," a "reasonable jury" could have arrived at the actual jury's verdict. *Bamford, Inc. v. Regent Ins. Co.*, 822 F.3d 403, 411 (8th Cir. 2016).

Here, Cattanach argues that no reasonable jury could have found that BNSF was not negligent based on the evidence presented at trial. Cattanach states that a reasonable jury could have perhaps found both BNSF and Cattanach negligent, and awarded Cattanach a discounted damages amount, but that the jury's findings in the February trial were unreasonable. Cattanach suggests that the jury may have misunderstood the verdict form, and meant to find the parties comparatively negligent. Cattanach offers two primary bases for his argument: First, Cattanach relies heavily on the BNSF employee-witness who testified on cross examination that the gap would have been a safety hazard had it been located a foot to the right. To Cattanach, that was an admission that the gap was in fact hazardous because – in his opinion – it was of little concern whether the gap was located in the center of the lane or on the right side. Second, Cattanach notes that the documentary evidence indicates that BNSF was semi-regularly informed of general problems at the railroad crossing in the years running up to his accident. According to Cattanach, no reasonable jury could find BNSF not negligent after hearing the evidence that was presented at trial.

But Cattanach's argument falters because the jury may have interpreted the evidence presented differently than Cattanach would have liked. For example, the

employee-witness who commented on the supposedly-hazardous status of the gap made his statement as a hypothetical: **if** the crack was as Cattanach's attorney had described it, **and if** the crack were located a foot to the right, **then** he would agree that it was a safety hazard. A reasonable jury could have perhaps found that the statement was not deserving of too much significance because of the caveats the witness gave, because it came out on cross examination, or because no other BNSF employee-witness agreed that the crack was a hazard.

Additionally, the evidence Cattanach relies on so heavily was not the only evidence introduced at trial. The trial lasted six days, and a reasonable jury could have relied on a number of alternative pieces of evidence to find that BNSF was not negligent. The jury saw photos of the gap and its placement in the context of the road, and a reasonable jury could have simply found the gap not so significant to make BNSF's failure to repair it negligent. A reasonable jury also could have relied on the officer's testimony that no one had complained about the gap, even while individuals complained about other aspects of the track, to support a finding that BNSF was not negligent in not repairing the gap.

Finally, a reasonable jury could have found, based on the photos and the testimony of numerous fact witnesses, that the gap would have been "obvious" to a reasonable person crossing the railroad tracks, that BNSF should not have been expected to anticipate the harm that occurred, and that BNSF therefore, as a landowner, could not be held liable to Cattanach. *See Olmanson v. LeSueur Cty.*, 693 N.W.2d 876, 880-81 (Minn. 2005) (stating that a landowner and an entrant's reciprocal duties of reasonable care

change in concert based on the expected use of the land and the circumstances of the entry).[2]

The Court need not, is not, and cannot decide today whether it agrees with the jury's decision, or whether it believes that the jury made a mistake in filling out the verdict form. It is not the Court's role to inquire into or speculate on the jury's deliberations or intentions. "[L]ong-recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." *Tanner v. United States*, 483 U.S. 107, 127 (1987). Instead, the Court's role today is limited: to decide whether a reasonable jury could have arrived at the verdict that the jury arrived at here. The Court finds that a reasonable jury could have.

---

[2] BNSF also argues that the jury's verdict can be supported by evidence that Cattanach was riding his bicycle in the center of the lane, as opposed to on the right side of the road, because "the law places a duty on bicyclists to ride as close to the right-hand side of the roadway as practicable." (BNSF's Br. in Opp'n at 5-6, Mar. 17, 2016, Docket No. 184.) BNSF's reference is to Minn. Stat. § 169.222, subdivision 4, which states in relevant part, "Every person operating a bicycle upon a roadway shall ride as close as practicable to the right-hand curb or edge of the roadway except . . . when reasonably necessary to avoid conditions, including . . . surface hazards . . . that make it unsafe to continue along the right-had curb or edge." From this, BNSF argues that a reasonable jury could have found that BNSF did not violate its duty of reasonable care to reasonably foreseeable plaintiffs in declining to fix the crossing gap because the gap was located in the center of the lane and it was reasonable for BNSF to assume that bicyclists would ride on the right side of the lane when crossing the railroad and not in the center. The Court finds that it is not necessary to address this argument because the jury's verdict can be supported by several other bases, as described above, and there is some uncertainty in Minnesota law as to whether and how the principle that a person may assume that others will obey the law extends to a property owner's duty of reasonable care in a failure-to-maintain-property case. *See* 4 Minnesota Practice, *Jury Instruction Guides*—Civil 25.12, Authorities (6th ed. 2015) (citing only motorist cases for the proposition that a person is entitled to assume others will obey the law, and noting "a majority of these cases arise from automobile accident litigation").

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Cattanach's Motion for New Trial [Docket No. 181] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 8, 2016            ____s/ John R. Tunheim____
at Minneapolis, Minnesota.          JOHN R. TUNHEIM
                                                         Chief Judge
                                        United States District Court