UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


ROBERT E. CATTANACH,                          CIVIL NO. 13-1664 (JRT/JSM)

      Plaintiff,

v.                                           <u>REPORT AND RECOMMENTATION</u>

BNSF RAILWAY COMPANY,

      Defendant.


      JANIE S. MAYERON, U.S. Magistrate Judge

      The above matter came on before the undersigned on Plaintiff's Objections to Requests for Costs [Docket No. 190].  This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.1(c).

**I.**    **BACKGROUND**

    **A.**    <u>**Procedural History**</u>

      Following a six-day trial, a jury entered a verdict in favor of defendant BNSF Railway Company ("BNSF") on plaintiff Robert Cattanach's allegations of negligence in connection with an injury Cattanach claimed to have suffered when riding his bicycle over BNSF tracks.  Redacted Verdict [Docket No. 173]; Complaint [Docket No. 1-1].  The District Court entered judgment in BNSF's favor on February 8, 2016.  [Docket No. 174].  BNSF submitted its Bill of Costs, a supporting affidavit and documentation of its costs on February 25, 2016.  [Docket Nos. 177 (Bill of Costs), 178 (Affidavit of Timothy K. Masterson ("Masterson Aff.") and exhibits)].  BNSF sought $14,702.43 in

costs, comprised of: 1) $400 in District Court fees; 2) $8,224.06 in transcript fees; 3) $1,893.56 in witness fees; 4) $2,278.71 in copy and printing charges; and 5) $1,906.10 in witness expenses for cab fare, air fare and parking.   Bill of Costs [Docket No. 177].   Cattanach moved for a new trial, which the District Court denied. [Docket Nos. 181, 197].   On May 3, 2016, the Clerk of Court entered a Cost Judgment for the total amount of costs claimed by BNSF.   Cost Judgment [Docket No. 188].   The Cost Judgment stated that a "motion for review of the Clerk's decision may be made within 14 days hereafter in accordance with Local Rule 54.3(c)."[1]  Id.  On May 17, 2016, Cattanach filed objections to the Bill of Costs.   Plaintiff's Objections to Requests for Costs ("Pl.'s Objs.") [Docket No. 190].   Cattanach did not object to the District Court fees of $400, but objected to every other category of costs.  Id. at pp. 1-5.[2]  On May 31, 2016, BNSF wrote to the District Court protesting that Cattanach's objections to the Bill of Costs were untimely under Local Rule 54.3(c), which provides that objections may be made within 14 days of the date of service of a party filing its Bill of Costs.   Letter to District Court dated May 31, 2016 [Docket No. 191].   BNSF filed its Bill of Costs on

---

[1]      L.R. 54.3(c) states:

(3) Review of clerk's action.

(A) Within 14 days after the clerk taxes costs, a party may file and serve a motion and supporting documents for review of the clerk's action.
(B) Within 14 days after being served with the motion for review, a party may file and serve a response.
(C) Unless the court orders otherwise, a party must not file a reply brief.

L.R. 54.3(c)(3).

[2]      The Court is referring to the page numbers assigned through CM/EFC because Cattanach did not number the pages of his submission.

February 25, 2016, Cattanach filed no objections within 14 days, the Clerk of Court entered the Cost Judgment on May 3, 2016, and 14 days later Cattanach filed his objections. Id., p. 1. BNSF argued that while the Local Rule provides for a review of the Clerk of Court's action taxing costs, the request for review must be made by motion, which Cattanach did not file. Id., pp. 1-2. At the June 22, 2016, hearing on Cattanach's Motion for a New Trial, the District Court ordered that it would construe Cattanach's objections as a "Motion for Review of the Cost Judgment" pursuant to D. Minn. LR 54(d), and gave BNSF an opportunity to respond to his objections. Order of Reference, p. 1 [Docket No. 195].

### B.   Cattanach's Objections and BNSF's Response

Cattanach objected to the Bill of Costs on several grounds. Regarding the transcript fees of $8,224.06, he specifically objected to: (1) an expert witness recording "surcharge" of $34.50 for Dr. Daniel Buss (Pl.'s Objs., pp. 1-2 (citing deposition invoice for Dr. Buss at page 7 of 128)); (2) a surcharge for extended hours by the court reporters in the sums of $34.50 for the deposition of Dr. Buss and $137.50 for Dr. Stephano Sinicropi (Pl.'s Objs., p. 2 (citing deposition invoices for Dr. Buss at page 7 of 128 and for Dr. Sinicropi at page 8 of 128)); (3) "MPEG/Digitizing" in the amount of $130 and media and cloud storage costs in the amount of $22 (Pl.'s Objs., p. 2 (citing deposition invoices for Dr. Sinicropi at pages 8-9)); (4) courtesy discounts from court reporters, which BNSF did not pass along to him when seeking its costs (Pl.'s Objs., p. 2 (citing deposition invoice for William Cragoe at page 12 of 128; deposition of Michael Spangler at page 13 of 128)); and (5) duplicates of the transcripts in other media or formats (Pl.'s Objs., p. 2 (citing depositions of Dale Johnson, David Krause,

3

and Raymond Duffany at pages 15, 17 and 19 of 128)).  Cattanach also maintained that charges for video depositions, surcharges, courtesy discounts and other extras were contained in nearly every invoice from pages 7 through 27 of BNSF's submission and posited that it would be "unfair" to require him to itemize each and every cost to which he objected.  Id.  Cattanach sought to have this entire category of expenses disallowed, with BNSF being given an opportunity to revise and resubmit its Bill of Costs, so long as transcript costs were limited to the actual costs of the transcripts and offset by any "courtesy discounts."  Id., pp. 2-3.

Regarding the witness fees ($1893.56) and witness expenses for travel and parking ($1906.10), Cattanach protested that BNSF's tallies were confusing and combined potentially reimbursable fees with other fees that should not be allowed, such as a fee for a witness who did not testify (Keith Jones) and a first class airline ticket for an expert witness.  Id., p. 3 (citing page 64 of 128).

Under the category of copying and printing costs ($2,278.71), Cattanach objected completely to these costs.   Cattanach contended that BNSF sought reimbursement for medical records that it repeatedly requested from the same providers from November, 2012 through September, 2015, which resulted in unnecessary and unjustified duplication costs.  Id., pp. 3-4.  Further, Cattanach generally objected to copy and printing expenses that he deemed were incurred in connection with BNSF's "scorched earth" discovery.   Id., p. 4.   Cattanach asked that all of these fees be disallowed in their entirety.  Id., p. 4.

In sum, Cattanach sought the elimination of all of the court reporters' special fees and surcharges; the costs of all depositions videotaped purely for the convenience of

BNSF's counsel; deduction of all "courtesy credits" not passed on to him; the denial of all witness fees and expenses, with leave for BNSF to refile a single request limited to fees necessary to secure a witness's presence at trial; and the elimination of all copy charges. Id., p. 5.

In response, BNSF noted that as a threshold matter, as Cattanach did not object to the court fees ($400) or the $410.80 in costs taxed for copies of trial exhibits (contained in line item "Fees for copies" of Cost Judgment), those portions of the judgment should not be disturbed. BNSF's Response to Plaintiff's Objections ("BNSF Resp."), pp. 2-3 [Docket No. 193].

As to the transcript fees of $8,224.06, BNSF rejected Cattanach's arguments that the costs in this category were improper or inflated, contending that it had already justified, substantiated, and documented each and every cost in this category and the Clerk of Court independently analyzed each invoice and determined that the costs met the requirements of 28 U.S.C. § 1920(2), which authorizes the Clerk of Court to "tax as costs . . .fees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . ." Id., pp. 3-4. Consequently, the Clerk's decision that the costs were proper shifted the burden to Cattanach to overcome the presumption that BNSF was entitled to the recover the allowable costs. Id., p. 4 (citing Stanley v. Cottrell, Inc., 784 F.3d 454, 464 (8th Cir. 2015) (citing Janis v. Biesheuvel, 428 F.3d 795, 801) (8th Cir. 2005)).

Addressing Cattanach's specific objections, BNSF contended that Masterson's affidavit established the necessity of obtaining certain transcripts in electronic-recorded form or more than one copy for use at trial as in the case of witnesses Johnson, Krause,

and Duffany.  Id., p. 4 (quoting Stanley, 784 F.3d at 468) (holding that §1920(2) "permits taxation of costs for both printed and electronically recorded transcripts of the same deposition as long as each transcript is necessarily obtained for use in a case.").  In particular, the costs were limited to court reporter fees, costs of exhibits and transcription costs.  Masterson Aff., ¶¶ 6-8.  For expenses for witnesses who testified at trial and were deposed by BNSF (e.g. Johnson, Krauss and Duffany), transcript costs included the original and a copy, but for trial witnesses deposed by Cattanach, transcript costs were limited to one transcript.  Id. at ¶ 6.  BNSF further explained the basis for seeking transcript fees for witnesses who plaintiff had designated deposition testimony for use at trial, and for witnesses not called for trial.  Id., ¶¶ 7, 8.  In addition, certain depositions (e.g. the depositions of Cattanach and his medical expert, Dr. Sinicropi) were videotaped for impeachment value, and with respect to Dr. Sinicropi, to ensure that his testimony was preserved in the event he did not appear live at trial.  BNSF Resp., p. 4.  BNSF argued that Cattanach's conclusory objections that the depositions were videotaped only for BNSF's convenience were insufficient to overcome the presumption of taxability under §1920.  Id., pp. 4-5.

Responding to Cattanach's complaints about the court reporters' surcharges for recording expert testimony and surcharges by witnesses for testimony taken outside of normal business hours, BNSF maintained that these additional fees were customary in the industry and were required because Cattanach's medical experts were unable to make themselves available during regular business hours.  Id., p. 5.

As for the "courtesy discounts" provided to BNSF from the court reporters,[3] BNSF pointed out that it was ultimately sought and was awarded less than the amount it was invoiced for the transcripts, and therefore, Cattanach's assertion that BNSF paid less than it was seeking to recover was simply wrong.  Id., p. 6.  Moreover, even after the deduction of any courtesy discount, its expense with respect to each deposition exceeded the amount it sought to tax against plaintiff.  Id.  In any event, BNSF submitted that Cattanach had waived his objections by failing to timely submit objections to BNSF's Bill of Costs and had failed to show that the Clerk erred in calculating the amounts to be taxed with respect to the deposition transcripts.  Id.

As to Cattanach's challenge to the witness fees and witness travel expenses ($1893.56 and $1906.10) awarded to BSNF – i.e. he was unable to tell which costs were legitimate and which were not – BNSF contended that Masterson's affidavit and supporting documents set forth, to the Clerk of Court's satisfaction, all of the costs sought.  Id., pp. 6-7.  BNSF maintained that it sought taxation only for costs allowable pursuant to 28 U.S.C. § 1821 ($40.00 per day attendance fee and mileage calculated at the rate for official travel in effect at the time the appearance took place, plus additional expenses such as parking and meals), and rejected Cattanach's suggestion that it had deliberately obfuscated the costs in this category to disguise improper costs.  Id., p. 7.

Regarding costs awarded for photocopies, BNSF denied that its costs resulted from duplicative requests by BNSF to Cattanach's medical providers for their records.  Id.  BNSF noted that Exhibit A to the Masterson Affidavit showed that this accusation was patently false and that BNSF only paid the providers for the records generated after

---

[3]     BNSF indicated that the courtesy discounts reflected in the invoices amounted in total to $128.85.  BNSF Resp., p. 5, n.1.

its previous requests – in other words, BNSF requested and paid for updated records. Id., pp. 7-8 (citing Masterson Aff., Ex. A; Supplemental Affidavit of Timothy Masterson (Suppl. Masterson Aff."), Ex. J [Docket Nos. 194, 194-1].

BNSF asked that the Clerk of Court's Cost Judgment of May 3, 2016, be affirmed in all respects.  Id., p. 8.

## II.    LEGAL STANDARDS

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, the district court may tax costs in favor of a prevailing party.  Title 28 U.S.C. § 1920 defines the expenses that may be taxed as costs pursuant to that rule.  Little Rock Cardiology Clinic PA v. Baptist Health, 591 F.3d 591, 601 (8th Cir. 2009).  "Under § 1920, a judge or court clerk 'may tax as costs' fees of the clerk and marshal, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of necessary papers, docket fees, and compensation of court appointed experts and interpreters."  Stanley, 784 F.3d at 464 (citing 28 U.S.C. § 1920(1)-(6)).  The court has substantial discretion in awarding costs to a prevailing party under § 1920 and Rule 54(d).  Zotos v. Lindbergh Sch. Dist., 121 F.3d 356, 363 (8th Cir. 1997) (citation and quotation omitted).  A district court's decision whether or not to award costs is reviewed under the abuse of discretion standard.  Martin v. DaimlerChrysler Corp., 251 F.3d 691, 695 (8th Cir. 2001).  "An abuse of discretion occurs where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions."  Little Rock Cardiology, 591 F.3d at 601 (quoting Lankford v. Sherman, 451 F.3d 496, 503–04 (8th Cir. 2006)).

As the losing party, Cattanach bears the burden of overcoming the presumption that BNSF is entitled to recover all costs allowed by § 1920.  Stanley, 784 F.3d at 464 (citing Janis, 428 F.3d at 801).  A party seeking review of costs taxed by the Clerk of Court has the burden to show that the cost judgment "is inequitable under the circumstances."  Concord Boat Corp. v. Brunswick Corp., 309 F.3d 494, 498 (8th Cir. 2002).

With these standards in mind, the Court turns to Cattanach's objections.

## III.   ANALYSIS

As an initial matter, the Court rejects Cattanach's suggestion that he was not required to describe each cost item to which he objected and that the burden at this stage belonged to BNSF to justify each cost.  Pl.'s Objs., p. 2.  The Clerk of Court has already determined that the costs were adequately documented and a Cost Judgment has been entered.  It was Cattanach's burden to show how it would be inequitable for the Court to tax specific items.  Therefore, the Court will only address Cattanach's specific objections and deems any other objections waived.

### A.   Fees for the Clerk ($400.00)

Cattanach has not objected to fees of the Clerk in the amount of $400. Therefore, the Cost Judgment with respect to this category of costs should be affirmed.

### B.   Transcript Fees ($8,224.06)

The Court may award fees for "printed or electronically recorded transcripts necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  The Eighth Circuit in Stanley held that 28 U.S.C. § 1920(2) permits the taxation of costs for both printed and electronically recorded transcripts provided each transcript was necessarily obtained for

use in the case.  784 F.3d at 465-67.  "'The necessarily obtained for use in the case' statutory standard for taxing costs for transcripts . . . does not allow the prevailing party to recover costs for materials that merely added to the convenience of counsel or the district court, or for materials produced solely for discovery; the standard requires that the prevailing party's transcription and copy costs must be reasonably necessary to litigation of the case."  10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2677 (3d ed.).  Transcripts are "necessarily obtained for use in the case" where testimony was used in motions or needed for impeachment at trial, the deponent was on the losing party's trial witness list, or the deposition was "necessary to the issues" when taken, even if "use of a deposition is minimal or not critical to that party's ultimate success."  Monelus v. Tocodrian, Inc., 609 F. Supp. 2d 1328, 1337 (S.D. Fla. 2009) (internal quotations and citations omitted).  A "deposition taken within the proper bounds of discovery will normally be deemed to be 'necessarily obtained for use in the case.'"  Procaps v. Patheon Inc., Civ. No. 12-24356, 2016 WL 411017, at *4 (S.D. Fla. Feb. 2, 2016) (citation omitted).  Costs of a videotaped deposition may be taxed provided there is adequate support for the expense.  King v. Turner, Civ. No. 05-388 (JRT/FLN), 2007 WL 1219308, at *4 (D. Minn. April 24, 2007).

The Court has reviewed the Masterson Affidavit, Exhibit A to his affidavit (which itemized the transcript costs), along with the supporting documentation (Exhibits B-D), and concludes that BNSF has for the most part, properly supported its request for this category of costs.

As to Cattanach's objections to the expert witness recording "surcharge" of $34.50 for Dr. Buss and the surcharge for extended hours by the court reporters in the

sums of $34.50 for the deposition of Dr. Buss and $137.50 for Dr. Sinicropi, the Court recommends overruling those objections.  BNSF claimed these surcharges were incurred in connection with the depositions of Cattanach's medical experts, who could not make themselves available during regular business hours, and that it was industry practice for court reporters to charge extra for expert deponents and for court reporters and witnesses to charge additional fees when they were called upon to provide services after normal business hours.  BNSF's Resp., p. 5.  Cattanach provided neither evidence nor law to the contrary, the Court has no evidence that the extended hours were unnecessary or solely for the convenience of BNSF, and the Court could not locate any binding precedent stating that such surcharges are not taxable.  Thus, the Court finds no error in the Clerk's determination that these costs were taxable.

Regarding Cattanach's objections to charges for "MPEG/Digitizing" and cloud storage costs in connection with the deposition of Dr. Sinicropi, and duplicate media and formats provided in connection with the depositions of Dale Johnson, David Krauss and Raymond Duffany, this Court finds no merit to his objections where he presented "no argument that any written or electronically recorded transcript of the same deposition was unnecessarily obtained for use in this case." Stanley, 784 F.3d at 467 (citing Craftsmen Limousine, Inc. v. Ford Motor Co., 579 F.3d 894, 898 (8th Cir.2009) ("Craftsmen presents no other argument indicating that the award of the video-deposition costs was unreasonable or unnecessary.)).  In Stanley, the Eighth Circuit specifically addressed and rejected the general proposition that a party should not be able to obtain an award for costs for both printed and electronic recorded transcripts of

the same deposition, providing however that each transcript was necessarily obtained for use in a case.  Id. at 465-67.  The court explained:

> There are many circumstances where both printed and electronically recorded transcripts are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2).  For example parties may capture depositions electronically in a large and complex patent case for use in trial while also retaining written transcripts for purposes of filing copies with the court. Attorneys may also be called upon to edit objectionable portions of electronically recorded testimony, or to supply an opposing party with a transcript to obtain a video or audio recorded deposition. In such circumstances both printed and electronic transcripts of the same deposition are "necessarily obtained for use in the case," thus satisfying the core requirement of the statute. 28 U.S.C. § 1920(2).

Id. at 466–67 (citations omitted).

On the other hand, Cattanach's contention that BNSF did not pass along the "courtesy discounts" in the amount of $128.85 that it received from each of the court reporters for any witness, and specifically as to Cragoe and Spangler, has merit and was substantiated by the invoices and Itemization of Costs.  See Masterson Aff., Ex. A; Ex. B, pp. 6, 8-13, 24, 26. While it is true that BNSF did not seek the full amount of the invoices for many of these deposition transcripts, it is also evident from its notations on the transcripts that its reductions represented shipping and handling fees for which it could not seek reimbursement.  See Craig v. District of Columbia, --F. Supp. 3d--, 2016 WL 3926253, at *13 (D.C.Cir. July 15, 2016) (finding that deposition transcript handling fees are not taxable.).  Thus, Cattanach should have been given the benefit of the court reporter courtesy discounts that BNSF received and the Court recommends reducing the amount taxed for transcripts by $128.85 to reflect these discounts.

In all, the Court concludes that BNSF established the necessity for the transcripts and the Cost Judgment associated with these transcripts should be affirmed, except for $128.85 representing discounts BNSF received but did not take into account in its application for costs.  In the absence of any contrary evidence or argument provided by Cattanach, the Court finds that transcript fees of $8,095.21 were properly taxed and the Cost Judgment should be amended accordingly.  <u>See</u> <u>Slagenweit v. Slagenweit</u>, 63 F.3d 719, 721 (8th Cir. 1995) (affirming taxation of costs when objecting party failed to show that transcripts were obtained for a purpose other than for use in the case).

### C.    <u>Witness Fees and Expenses</u>

The Court rejects Cattanach's general argument that BNSF conflated allowable and unallowable expenses or obfuscated costs in this category to disguise improper costs.  The only specific objections that Cattanach raised with respect to the witness fees paid for appearances at trial were the fees associated with Keith Jones, a BNSF representative Cattanach claimed that BNSF did not call at trial, totaling $40, and the cost of a first class airline ticket for Dr. David Krauss, totaling $1,730.20.  Masterson Aff., Ex. A, pp. 2, 3; Ex. B, p. 65.  As for Keith Jones, Cattanach's objection should be overruled as Jones did testify at trial  <u>See</u> Docket No. 170 (Minutes for trial on February 4, 2016).  With respect to Dr. Krauss' first class airline ticket, 28 U.S.C. § 1821(c)(1) provides that a witness who travels by common carrier "shall utilize a common carrier at the most economical rate reasonably available."  BNSF made no showing that a first class ticket for Dr. Krauss to fly between Los Angeles and Minneapolis was the "most economical rate reasonably available."  In fact, this expense is not addressed in the Masterson affidavit, nor in BNSF's response to Cattanach's

claim that this cost was unreasonable.  See Green Construction Co. v. Kansas Power & Light, 153 F.R.D. 670, 680-681 (D. Kan. 1994) (on a review of costs taxed by the Clerk of Court, court reduced the amount taxed for first-class airfare finding the amounts excessive and not based on the most economical rate available).  Therefore, the Court concludes that the first class airfare was excessive and recommends sustaining Cattanach's objection to this airfare, and reducing the award of witness expenses for cab fare, air fare and parking from $1906.10 to $175.95.[4]

In sum, the Court recommends the category "Other costs (witnesses' fees)" be reduced in the Cost Judgment from $1906.10 to $175.95.

### D.    Copying and Printing Costs

Cattanach objected that the costs in this category were unnecessarily incurred during BNSF's "scorched earth" discovery in which BNSF obtained hundreds of pages of his bike logs and documents relating to his divorce.  Pl.'s Objs., p. 3.  Further, he claimed that BNSF asked for the same medical records repeatedly, driving up photocopy costs.  Id.  The Court finds Cattanach's general objections meritless based on how BNSF conducted discovery.  It is well-established that the district court "may tax costs for discovery-related copying."  Stanley, 784 F.3d at 467 (citation omitted).  If Cattanach believed that this discovery was irrelevant and only sought to intimidate and harass him, as he now claims, he could have brought a motion for a protective order.  As to his claims about unnecessary duplication of the medical records, Masterson explained in his supplemental affidavit that BNSF's attorney was careful to ask only for

---

[4]    Had BNSF sought reimbursement for a reasonable economy fare, the Court likely would have affirmed that cost.  But lacking any information as to economy airfare on February 2-3, 2016, the dates of Dr. Krauss's travel, the Court will not speculate as to an appropriate amount for this expense.

updated medical records.  <u>See</u> Masterson Suppl. Aff., ¶ 2.  Exhibit J to the Supplemental Affidavit shows that this was the case.  Cattanach had failed to show that the copies were obtained for any reason other than trial preparation and as a result, his objections to this category of expenses should be overruled.

## IV.  CONCLUSION

By-and-large, Cattanach failed to show that the taxed costs were inequitable, improper or otherwise fell outside the scope of taxable costs.  The exceptions are BNSF's failure to account for the courtesy discounts in connection with the deposition transcripts ($128.85) and Dr. Krauss's first class airfare ($1,730.20).  Therefore, the Court recommends the Cost Judgment in the amount of be reduced from $14,702.43 to $12,843.38.

## V.  RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's Objections to Requests for Costs [Docket No. 190] should be overruled in part and sustained in part.

2.  The Cost Judgment entered on May 3, 2016 [Docket No. 188] should be amended to award costs in the amount of $12,843.38 to defendant.

Dated:  October 31, 2016

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

**Filing Objections**:  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date**:  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.